IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SEYON R. HAYWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09−cv−0807−MJR−SCW |
| | ) |
| JODY HATHAWAY, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to District Judge Michael J. Reagan pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

## BACKGROUND

*Pro se* Plaintiff Seyon R. Haywood ("Haywood"), filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 5, 2009, alleging that Defendants violated his constitutional rights while he was an Illinois Department of Corrections (IDOC) inmate housed at the Shawnee Correctional Center (Doc. 1). After conducting a preliminary review of Haywood's Amended Complaint (Doc. 9) pursuant to 28 U.S.C. §1915A, on May 24, 2010, District Judge Reagan dismissed *with* prejudice Haywood's claims involving a disciplinary proceeding that resulted in the loss of good time credits, and three of the named Defendants: K. Collier, David Rockwell and Benjamin Russell (Doc. 12, p. 4). However, Haywood's Eighth Amendment claim, based on the conditions of his confinement while he was in segregation (extreme cold), was allowed to proceed against Defendant Jody Hathaway ("Warden Hathaway"). Pursuant to 28 U.S.C. §§636(b)(1)(B), FEDERAL RULE OF CIVIL PROCEDURE 72(b), and SOUTHERN DISTRICT OF ILLINOIS LOCAL RULE 72.1(a), Judge Reagan then referred this action to the assigned Magistrate Judge for further pretrial proceedings (*Id.*).

Now before the Court for a Report and Recommendation is the Motion for Summary Judgment (Doc. 23) filed by Warden Hathaway alleging that Haywood failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), on April 8, 2011, the Court conducted an evidentiary hearing. Specifically, the Court inquired into whether Haywood exhausted his administrative remedies as to his one remaining claim challenging the allegedly cruel and unusual conditions of his confinement. Based on the record, the evidence submitted at the hearing, and the fully briefed motion; and for the reasons outlined below, it is **RECOMMENDED** that the District Court **DENY** Warden Hathaway's Motion for Summary Judgment and adopt the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On Summary Judgment the Court must construe all facts in the light most favorable to Haywood, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). The material facts and sequence of events relevant to Warden Hathaway's motion are generally not in dispute. Rather, the parties dispute whether the emergency grievance procedures that Haywood followed were sufficient to meet the PLRA's exhaustion requirements.

In January 2009, Haywood was an inmate housed at the Shawnee Correctional Center's ("Shawnee") "segregation 1 unit" (Doc. 33-4, Haywood Affdvt). Haywood alleges that due to freezing outside temperatures, a lack of heat and a broken window, his cell in segregation was so cold that he feared he might "freeze to death" (Doc. 33-1). Correctional officers allegedly would leave the cold air blowers on making the cells even colder (*Id.* at 2). Haywood's requests—that the window be fixed or covered with plastic and for extra blankets—were denied. As a result, on

January 22, 2009, Haywood filed an emergency grievance directly with the Chief Administrative Officer (CAO), Warden Hathaway. On January 23, 2009, Haywood's emergency grievance was returned to him by Warden Hathaway, who had checked a box noting that "an emergency is not substantiated. Committed person should submit this grievance in the normal manner" (*Id.*).

On February 3, 2009, Haywood forwarded his returned grievance directly to the Administrative Review Board (ARB) to appeal the CAO's decision (*Id.* at p. 2). Haywood's grievance was received by the ARB on February 9, 2009. On February 14, 2009, the ARB returned Haywood's grievance along with a "Return of Grievance or Correspondence" form stating that Haywood was required to submit additional information; specifically, IDOC forms DOC 0046 and DOC 0047 (Doc. 33-2). The ARB never reached the merits of Haywood's grievance, and Haywood never submitted the additional information requested by the ARB. In her Affidavit, ARB member Sarah Johnson acknowledges that "[a]n inmate may request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO" (Doc. 33-3, ¶ 5). Further, in such a situation, an inmate may appeal the CAO's decision to the ARB, as Haywood did here (*Id.*).

On October 5, 2009, after being transferred to Dixon Correctional Center, Haywood filed his original Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) alleging, in part, that Warden Hathaway subjected him to cruel and unusual punishment in violation of the Eighth Amendment when he was forced to endure extreme cold temperatures while housed in Shawnee's segregation unit for approximately 60 days during the winter of 2009.

On April 8, 2011, the undersigned held a hearing in accordance with *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). At the hearing, the Court entered into evidence the two IDOC forms that the ARB requested Haywood submit when it returned his grievance—DOC 0046 and DOC 0047 (Court's Exhibits 1 and 2, respectively). Court's Exhibit 1 is the "Offender's Grievance" form

which Haywood had already filled out and initially submitted to the CAO, and then later to the ARB (*see* Doc. 33-1). Court's Exhibit 2 is the "Response to Offender's Grievance" form which Haywood never received because his grievance was not reviewed on the merits.

In his Motion for Summary Judgment, Warden Hathaway argues that Haywood failed to exhaust his administrative remedies with regards to his Eighth Amendment, conditions of confinement claim because after Warden Hathaway, as the CAO, had determined that Haywood's grievance was not an emergency and returned the grievance, Haywood should have resubmitted his grievance "using the regular grievance procedure" (Doc. 24, p. 6). Instead, Haywood appealed Warden Hathaway's decision directly to the ARB. The ARB however returned Haywood's grievance to him with a request for additional information and thus, they never made a final determination on the merits of Haywood's grievance. As a result, Warden Hathaway insists that Haywood failed to exhaust his administrative remedies.

During the evidentiary hearing, Warden Hathaway added the following to his argument:

| | |
|---|---|
| Defense Counsel: | If the Administrative Review Board agrees that there was an emergency then they will address the emergency issue. If they agree with the chief administrative officer that there wasn't an emergency, they will just send it back to the inmate telling him that he needs to submit additional documentation. |
| The Court: | Where is that set forth though? |
| Defense Counsel: | I don't believe it is. I believe that's … standard procedure.… If they [the ARB] agree it is not an emergency they will send it back to the inmate with the indication that they need the additional documents which would only be received through the normal grievance process.… |
| The Court: | But they don't tell the inmate that we're sending this back because we don't believe it's an emergency. |
| Defense Counsel: | Not that I've seen, no. |

\*\*\*

| | |
|---|---|
| The Court: | [So,] what you are saying is the inmate has to assume that what they're being told is you have to resubmit through the normal course. |
| Defense Counsel: | Correct. |

Rough Transcript, April 8, 2011 Hearing, pp. 9-11. So, at the evidentiary hearing, Warden Hathaway argued, for the first time, that when the ARB returns a grievance with a request for additional information, they are (implicitly) affirming the decision of the CAO (the Warden), that the grievance is not an emergency. And, at the same time, the ARB is implicitly informing the inmate that his grievance should be resubmitted via the standard grievance process. Warden Hathaway referred to this process as "standard procedure." However, as the Court noted during the hearing, it is a procedure that is not set forth anywhere in the Illinois Administrative Code.

For his part, at the evidentiary hearing, Haywood argued that he exhausted his administrative remedies with respect to his condition of confinement claim by forwarding a copy of his grievance directly to the ARB on February 3, 2009. Haywood contended that his grievance was an emergency grievance, as provided for in 730 Ill. Comp. Stat. 5/3-8-8 (c), which can be filed directly with the ARB. Further, citing the Seventh Circuit's opinion in *Dole v. Chandler*, Haywood argued that a grievance can't be dismissed based on a provision where the "rulebook" is silent. 438 F.3d 804, 810 (7th Cir. 2006). Finally, Haywood noted that it's been almost 26 months since Defendants received his grievance and, in spite of it being properly filed, he has not received a decision on the merits.

## **CONCLUSIONS OF LAW**

Summary Judgment is proper "if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton,* 604 F.3d 464, 467 (7th Cir. 2010).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). This statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such *administrative remedies as are available are exhausted.*" *Id.* (emphasis added). Thus, by the statue's plain language, an inmate is required to exhaust only those administrative remedies that are available to him. *Id.*

The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13, 2009 WL 330531 (7th Cir. 2009), *citing Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Generally speaking, if an inmate follows the prescribed steps and can do nothing more, then available remedies were exhausted. *Id.* An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance, s*ee Kaba*, 458 F.3d at 684; but an inmate "cannot be faulted for not knowing how best to respond to the prison authorities' inaction." *Wilder*, 310 Fed.Appx. at 14, *citing Dole*, 438 F.3d at 811. Finally, "when a grievance meets all of the Administrative Code's written requirements, it cannot be dismissed because of a requirement on which 'the administrative rulebook is silent.'" *Dole*, 438 F.3d at 810, *quoting Strong*, 297 F.3d at 650.

"The contours of the exhaustion requirement are set by the prison grievance system in each state. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). In Illinois, to properly exhaust their claims, inmates such as Haywood are required to follow the regulations contained in the IDOC's "Grievance Procedures for Offenders," as codified in the Illinois Administrative Code tit. 20, §504.800 *et seq*

(2010) (the "Code"). Normally, the proper grievance procedure for IDOC inmates includes a "three-step process which begins with an attempt to resolve the issue informally through a prison counselor, then proceeds to review on the institutional level, and finally ends with an administrative appeal to the [D]irector of the Department of Corrections, who has delegated review authority to the ARB." *Glick v. Walker*, 385 Fed.Appx. 579, 581, 2010 WL 2775864 (7th Cir. 2010). However, pursuant to Ill. Admin. Code tit. 20, §504.840 (2010), "[a]n offender may request a grievance be handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer" (normally, the Warden). Then, if the CAO determines that there is a "substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis" and the processing of the grievance shall be expedited. *Id.*

The section of the Code outlining these emergency procedures, however, is silent regarding what procedures should be followed if the CAO determines that the emergency is not substantiated.[1] The Code's very next section though provides: "If, after receiving the response of the [CAO], the offender still feels that the problem, complaint, or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." §504.850 (2010).[2] So, Haywood's grievance—and the specific procedural steps now at issue in the instant Motion for Summary Judgment—falls into the penumbra lying in between the Code's standard and emergency grievance procedures.

Once again, the Court notes that many, if not all, of the facts that are material to the outcome of Warden Hathaway's motion are not in dispute. As such, the Court must determine—as a matter of law—if the emergency grievance procedures that Haywood did in fact follow were

---

[1] The Court finds it ironic that even though the code is silent as to a non-emergency finding by the CAO, the IDOC's standard "Offender's Grievance" form (DOC 0046) provides a box for exactly such a finding.

[2] An appeal to the Director and an appeal to the ARB—which the Director appoints to be his or her representative—are one and the same.

sufficient to find that he exhausted the administrative remedies that were available to him. The Court finds that this specific issue has been dealt with on at least two occasions by the Seventh Circuit Court of Appeals in two cases that are particularly instructive.

First, in *Thornton v. Snyder*, the defendants attempted to argue that "after corrections officials deemed the grievance not an emergency, the grievance ceased to exist." 428 F.3d 690, 694 (7th Cir. 2005). The *Thornton* Court flatly rejected this argument and found that the inmate plaintiff had "followed the proper procedure for filing a grievance that he considered an emergency by submitting his grievance directly to the warden." *Id.*, *citing* 20 Ill. Admin. Code §504.840. Similar to Haywood, the response that Thornton received "made no comment on the merits of the grievance and indicated only that the warden did not consider the complaint worthy of emergency treatment." *Id.* The *Thornton* Court then found that, "[t]here is nothing in the current regulatory text … that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis." *Id.* *Thornton* was decided in 2005, and as far as the Court can discern, the relevant regulatory text has not changed or otherwise been amended. Yet, in spite of *Thornton*, Warden Hathaway attempts to make a similar argument—that after learning his grievance would not be handled on an emergency basis, Haywood was required to do more; specifically, to start over by resubmitting his grievance via the standard grievance procedures.

*Glick v. Walker*, is even more instructive and, in the Court's opinion, completely contrary to the argument that Warden Hathaway attempts to make here. 385 Fed.Appx. 579, 2010 WL 2775864 (7th Cir. 2010). Inmate-plaintiff Glick also filed an emergency grievance directly to the warden that the warden concluded did not involve an emergency. *Id.* at 583. Glick then appealed that decision directly to the ARB, which agreed with the warden that Glick should have followed the standard, non-emergency grievance procedures. *Id.* The ARB then specifically told Glick to start over by

submitting his grievance to his institution's grievance officer. *Id.* However, prior to learning about this ruling Glick was transferred to another facility. *Id.* Defendants argued that Glick never properly submitted his grievance to the ARB. *Id.* The *Glick* Court however found that:

> The defendants' position that [Glick] was required to go back to the grievance officer and start over after his emergency grievance had been rejected by the warden and the ARB is at odds with 20 Ill. Admin. Code §504.840 and *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). In *Thornton*, … we explained that an inmate who seeks emergency review under §504.840 has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary. The defendants cannot use the exhaustion requirement to demand that an inmate do more than what administrative rules require. *See Kaba*, 458 F.3d at 684; *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

385 Fed.Appx. at 583. In short, the *Glick* Court found that Glick had done everything that he was asked to do by the ARB, and couldn't be asked by Defendants, *post hoc*, to do more than the administrative rules required.

In spite of this clear precedent to the contrary, at the evidentiary hearing, Warden Hathaway argued that, after Hawood's emergency grievance was returned to him by the ARB, he was required to resubmit his grievance via the standard procedures and receive a final determination on the merits of his grievance from the ARB. And, because Haywood never received such a final determination, he failed to exhaust his administrative remedies. As the Court noted at the hearing, however, the problem with Warden Hathaway's argument is that this additional procedure—which Warden Hathaway referred to as "standard"—is not explicitly provided for anywhere in the Administrative Code. And, as the *Thornton* Court clearly found: "[t]here is nothing in the current regulatory text … that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis." This finding still holds true today. If prison officials want inmates to do more after an emergency grievance is denied by the ARB without any specific explanation, they need to codify those procedures and make explicit what they now claim is implicit.

At bottom, the Illinois Administrative Code is silent in the exact area where inmate-plaintiffs Thornton, Glick and now Haywood are alleged to have stumbled, or not followed the proper procedures. This Court however, like the *Thornton* and *Glick* Courts, will not require Haywood to do more than what is asked for in the rules as they are currently written. Warden Hathaway has a remedy for changing this outcome, but it is not with this Court. Instead, his remedy lies with the Bureau of Prisons, and an amendment to the Illinois Administrative Code clarifying the sparsely defined IDOC emergency grievance procedures.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendant Jody Hathaway's Motion for Summary Judgment (Doc. 23) be **DENIED,** and the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation within **fourteen (14) days** of being served with a copy. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Accordingly, **Objections to this Report and Recommendation must be filed on or before Monday, May 9, 2011.**

IT IS SO ORDERED.

DATED: April 22, 2011.

/s/ *Stephen C. Williams*
**STEPHEN C. WILLIAMS**
**United States Magistrate Judge**